UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES E. ZELLERS, SR., )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>RALPH S. NORTHAM, *et al.*, )<br>    Defendants. ) | Civil Action No. 7:21-cv-393<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

## MEMORANDUM OPINION

Charles E. Zellers, Sr., an inmate in the custody of the Virginia Department of Corrections ("VDOC"), proceeding *pro se,* commenced this civil action under 42 U.S.C. § 1983. The case has been conditionally filed.[1] By order entered August 10, 2021, the assigned United States Magistrate Judge directed Zellers to file a second amended complaint. That order described the nature of Zellers's prior complaint and the problems with it. In particular, the order noted:

> Zellers's complaint names 9 specific persons as defendants, refers to an additional 26 different John Doe defendants, and contains 36 numbered claims. Grouping similar listed claims together, he alleges that:
>
> a. defendant Governor Ralph S. Northam's COVID-19 Early Release Plan discriminated against him because it made it impossible for "old-law" prisoners, like himself, to be eligible for a parole release or conditional pardon, even if they otherwise had extraordinary circumstances warranting release (Claims 1–2);
>
> b. different defendants, most of whom worked at Buckingham Correctional Center ("BKCC"), failed to provide adequate hygiene, safety, and sanitation practices on May 24, 2020, and those failures led to him contracting COVID-19, being hospitalized for a lengthy period of time, and almost dying (Claims 3, 17, 29, 32);

---

[1] Since the case was first transferred to this court, Zellers has continued to file additional documents and declarations (from himself and from others). Many of these are not titled as motions and contain no explanation as to which, if any, pleadings they relate. Zellers is advised that it is not proper to proceed in such a piecemeal fashion. If he has documents he wishes to file with the court in the future, he is advised that these documents should be accompanied by a statement or notice that sets forth his request for how the documents are to be considered by the court and to which filing or motion they relate.

c. inadequate staff were provided for him to report the medical symptoms he experienced on June 4, 2020, and he was not treated by medical personnel in a timely fashion, exacerbating his symptoms and violating his Eighth Amendment rights (Claims 4–6, 8);

d. various transportation officers on different dates and in separate incidents used excessive force in violation of the Eighth Amendment when restraining him for transportation or escort to or from different locations when they applied overly tight restraints and otherwise were indifferent to his needs during those transports, including trips on June 4, 2020, September 1, 2020, September 3, 2020, November 13, 2020, January 29, 2021, February 4, 2021, and March 4, 2021 (Claims 7, 14, 18–21, 25–27);

e. unknown persons kept him in overly tight flex cuffs while he was in the ICU for approximately one month, despite the fact that armed VDOC officers were posted with him and despite the fact that he was on life support and a ventilator and "nearly dead," which violated his Eighth Amendment rights (Claims 9, 11–12);

f. a John Doe nurse at the hospital assaulted him and may have been taking his medications (Claim 10);

g. other John Doe defendants (presumably employed by the hospital) removed and inserted chest tube sutures at some point between July 25, 2020, and August 14, 2020, without any anesthetic, causing him significant pain (Claim 13);

h. John Doe #14 violated his First Amendment rights by denying him telephone access and access to mail, from June 4, 2020, through September 1, 2020, while he was hospitalized (Claims 15–16);

i. Dr. Ohai, a medical doctor at BKCC, was deliberately indifferent to his serious medical needs based on various alleged actions or inactions after he returned to BKCC, and certain VDOC policies promulgated by defendant Harold Clarke violated his Eighth Amendment rights by limiting the medications allowed to prisoners (Claims 22, 28, 30, 33);

j. Defendant Tammy Williams violated plaintiff's First Amendment rights by denying plaintiff telephone access and invaded his "bodily privacy rights" in violation of the Fourth Amendment when she allowed male and female correctional officers to view the feed from cameras that monitored plaintiff, including when he was nude entering and exiting the shower daily, while he was housed at VDOC's secure medical unit from September 3, 2020, through November 13, 2020 (Claims 23–24);

k. Defendant Woodson violated his Fourteenth Amendment rights by terminating him from his prison job without due process upon his initial transfer to the hospital (Claim 31); and

> l. Other conditions at BKCC violate his rights, including the laundry department washing inmate clothing in cold water, the inability of prisoners to control water temperature in the shower, and the poor quality and nutritionally inadequate meals served at BKCC (Claims 34–36).

(Dkt. No. 43, ¶ 2.)

The order then went on to explain:

> A review of the listed claims and the defendants named in each reveals that the complaint contains misjoined claims and defendants. A plaintiff may only join different defendants in the same suit if the claims against them arose out of the same transaction or occurrence, or series thereof, *and* contain a question of fact or law common to all the defendants. Fed. R. Civ. P. 20(a)(2). Thus, where claims arise out of different transactions and do not involve all defendants, joinder of the claims in one lawsuit is not proper. *Riddick v. Dep't of Corr.*, No. 7:17CV00268, 2017 WL 6599007, at *1 (W.D. Va. Dec. 26, 2017). Here, Zellers's varied claims are against different defendants, do not arise out of the same transaction or occurrence, and do not appear to contain common questions of fact or law. Thus, they are misjoined.

(*Id.*, ¶ 3.)

To remedy the misjoinder, the court directed Zellers to file a second amended complaint. Zellers was specifically told that he was not permitted to "include in his second amended complaint all of the claims and defendants currently in this lawsuit, but he may choose which claim or claims to include in this action." (*Id.*, ¶ 4 (footnote omitted).) He also was told that he could file separate complaints asserting claims that could not be joined, and the Clerk was directed to send him multiple copies of blank complaint forms. The court clearly warned Zellers that "**HIS FAILURE TO FILE A SECOND AMENDED COMPLAINT COMPLYING WITH THIS ORDER WITHIN TWENTY-ONE DAYS MAY RESULT IN THE DISMISSAL OF THIS CASE.**" (*Id.*)

    I.    MISJOINDER OF CLAIMS IN SECOND AMENDED COMPLAINT

Zellers has since filed his second amended complaint, which is before the court for review pursuant to 28 U.S.C. § 1915A(a). Despite the court's prior warnings, and instead of complying with the court's directions, Zellers has filed another omnibus complaint. (Dkt. No.

58.) His second amended complaint is 67 pages long (not including exhibits), and it also includes a 45-page declaration in support of his claims. It names 15 defendants (including 6 John Doe defendants) and contains 28 listed claims. (*See generally* Dkt. No. 58.) It describes events that occurred both at Buckingham Correctional Center ("BKCC"), which is within this judicial district, and at hospitals outside of this district. The alleged events span more than a year—from May 2020 through June 2021.

Upon review of the second amended complaint, the court concludes that it contains misjoined claims and defendants.[2] By way of one example only, events that occurred while he was under the care of physicians and nurses at MCV Hospital in Richmond are not sufficiently related to Zellers's claim that the conditions at Buckingham Correctional Center violated his Eighth Amendment rights.

In this circumstance, and in the absence of any statute of limitations issues, this court will not dismiss plaintiff's entire lawsuit, or sever all of his claims into separate actions, but will instead allow some properly joined claims to go forward in this case and dismiss misjoined claims and defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (holding that district court should have severed case into separate actions or dismissed improperly joined defendants).

In particular, the court will allow in this case Zellers's claims that certain defendants Northam, Clarke, and John A. Woodson failed to adequately protect him from contracting COVID-19. This includes the allegations set forth in Claims 1, 15, 25, 26, 27, and 28, which allege unsanitary conditions, failures to conduct contact tracing or to provide personal protective equipment, a general failure to protect him from COVID-19, and a failure to adequately and reasonably reduce prison population to prevent the spread of COVID-19. The court also will

---

[2] The court's review was made more difficult by the fact that his claims do not clearly specify which defendants are being named as to each. Instead, the court relies on the allegations in each, as well as his statements in his attached declaration, to make educated guesses about which defendants are named in which claims.

include Claims 3 through 6 as against Northam, Clarke, Warden Woodson, and Correctional Officer L. Woodson. These claims focus on Zellers's inability to receive prompt medical attention once he began experiencing medical symptoms of COVID-19. For example, he alleges that, although he complained of medical symptoms, he was unable to quickly report them to staff because there was no one available to whom to report them. He also did not receive immediate medical attention for those symptoms, which he attributes to chronic understaffing at BKCC. He also alleges that defendants failed "to create and implement a policy" requiring that suspected or confirmed COVID-19 patients be transported by wheelchair or stretcher to medical; consequently, he was forced to walk to medical despite having difficulty breathing.

All of Zellers's remaining claims will be dismissed without prejudice. This includes all claims arising from events that occurred while he was hospitalized in Richmond (Claims 8–12, 14, and 23); Eighth Amendment/excessive force claims against various transportation officers and others, who allegedly applied restraints too tightly and/or refused to loosen them when he was being transported from BKCC to VCU hospital on June 4, 2020 (Claim 7), from the hospital back to BKCC on September 1, 2020 (Claim 13), from isolation to Southampton Memorial Hospital's Secure Medical Unit for Rehabilitation and Supportive Care on September 3, 2020 (Claim 16), and from Southampton Memorial Hospital back to BKCC on November 13, 2020 (Claim 18); a claim that he was denied bathroom breaks during the September 3, 2020 and November 13, 2020 trips (Claims 17, 19); a claim of deliberate indifference based on Dr. Paul Ohai's refusal to order that he be permitted to be transported either in flex cuffs or in larger restraints to avoid injury (Claim 22); and a general claim that his confinement violated due process because it was an atypical and significant hardship, in addition to again raising the denial of parole (Claim 24).

Finally, several of Zellers's other claims may not technically be misjoined since they are brought against defendants remaining in the case, but they arise from different factual

5

circumstances and constitute distinct legal issues. Under this circumstance, the court concludes it is appropriate to sever those claims under Federal Rule of Civil Procedure 21. *See Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) ("[J]ustification for severance is not confined to misjoinder of parties."). Use of Rule 21 has been approved by circuit courts in the context of prisoner complaints, with and without misjoinder. *See Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018) (explaining that district court should have severed unrelated claims under Rule 21 and *sua sponte* dismissed improper defendants rather than dismissing prisoner's amended complaint). In determining whether severance is proper, courts consider whether the issues to be severed are significantly different from one another, will require different witnesses or different documentary proof, and the prejudice to any party as to the decision of whether to sever. *See Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007).

Here, those factors weigh in favor of severance. Although some of the defendants overlap between the claims remaining in the case and those being severed, the facts underlying the different claims are distinct, based on different events, and will require different witnesses and proof. Equally as importantly, allowing Zellers to bring disparate claims in a single suit is contrary to the purposes of the Prison Litigation Reform Act ("PLRA"). It would effectively allow Zellers to challenge unrelated actions by different defendants in a single suit, circumventing both the PLRA's filing fee requirements and possibly its three-strike rule. *See* 28 U.S.C. § 1915(b)(1), (g).

Thus, the court will exercise its discretion to sever these other claims, both to streamline this case and to ensure that Zellers is not permitted to avoid PLRA requirements. These include Zellers's claims that Clarke (presumably through VDOC's policies) improperly denied him access to the telephone, JPay, and the ability to communicate with clergy, family, or friends

(Claim 20), and improperly denied him "due process" because both male and female correctional officers were permitted to view him naked on video as he was being observed (Claim 21).

Additionally, Zellers's challenges to the decisions of the parole board not to release him and his repeated requests to be released from custody are not properly part of this lawsuit, as discussed in more detail *infra* at Section II. This includes Claim 2, as well as his allegations elsewhere where he continues to challenge the denial of parole to him.

With regard to the claims that are being dismissed, the dismissal is without prejudice, and Zellers may file new lawsuits asserting those claims, if he so chooses. Zellers is advised, though, that each lawsuit he files will require him to pay a separate filing fee. Also, if the claims in any new case are dismissed as frivolous or for failure to state a claim, that dismissal will likely count as a "strike" for purposes of the PLRA's three-strikes provision, 28 U.S.C. § 1915(g). *See Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1727 (2020) (holding that a dismissal of a suit for failure to state a claim, whether with or without prejudice, counts as a strike under the PLRA). Thus, he should carefully consider what claims to pursue. Lastly, Zellers should file any lawsuits related to claims arising at either hospital (VCU Hospital in Richmond and Southampton Hospital in Franklin), in the United States District Court for the Eastern District of Virginia, not this court.

## II. MOTIONS FOR PRELIMINARY INJUNCTION[3]

Also pending before the court are several motions for preliminary injunction filed by Zellers (Dkt. Nos. 17, 34) and a "motion for enlargement of custody" (Dkt. No. 64), which seeks basically the same relief. In them and in numerous declarations he has submitted and authorized others to submit on his behalf, he explains that he believes he is at risk of re-contracting COVID-

---

[3] The court entered an order directing Warden Woodson to respond to the motions seeking injunctive relief, and provided a copy of that order via certified mail to Warden Woodson and, via the Agreement on Acceptance of Service, to the Office of the Attorney General of Virginia. No response was filed. Nonetheless, the court concludes that, based on the information before it, injunctive relief is not appropriate in this case.

19 given his medical vulnerabilities and the continued conditions at BKCC. He also points to his lack of disciplinary infractions since March 2000, his low recidivism scores, and his "verifiable re-entry plan" to maximize safety for him and the public, and he asks the court to allow him to serve the remainder of his sentence at his mother's home. He characterizes this relief several ways (as release, as home confinement, as "enlargement" of custody), but the goal—to be housed at his mother's home—remains unchanged. In essence, his requests echo many of the requests for compassionate release the court has received from defendants it has sentenced, except that Zellers is not a prisoner subject to a judgment of any federal court, but instead is serving a sentence imposed as part of a state-court judgment.

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. *Winter*, 555 U.S. at 22. Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

The court has reviewed the record and concludes that Zellers is not entitled to the injunctive relief he seeks. In particular, to the extent that he is asking to be released on parole or asking for a modification of his sentence to allow him to serve it on home confinement, "a § 1983 action will not lie when a state prisoner challenges the fact or duration of his confinement and seeks either immediate release from prison or the shortening of his term of confinement."

8

*See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (internal quotation marks and citations omitted). If the basis for his request to be released to live at his mother's home were based ***solely*** on the allegedly dangerous conditions of his confinement at BKCC, then it is an open question in this circuit whether such relief could be granted in the context of a § 1983 case or whether a habeas petition under 28 U.S.C. § 2254 is the more appropriate vehicle for such a challenge. *See Toure v. Hott*, 458 F. Supp. 3d 387, 398 (E.D. Va. 2020) (discussing split in federal circuits on issue and noting that the Fourth Circuit has not addressed the issue in a published decision); *see also Wilborn v. Mansukhani*, 795 F. App'x 157, 163–64 (4th Cir. 2019) (same).

Zellers also argues that he should have been released on parole under an expanded program that required consideration of parole-eligible prisoners for release in light of COVID-19. His challenge to the denial of parole, if successful, would result in his immediate release; thus, § 1983 is not a proper vehicle for this particular challenge. *Wilkinson*, 544 U.S. at 79; *but cf. id.* (further explaining that where challenges to the parole board attacked only the wrong procedures and did not necessarily mean release from confinement and where petitioners were not seeking an injunction ordering his immediate or speedier release into the community, § 1983 could be used for the challenge).

Regardless, the court will assume for purposes of addressing Zellers's motions that his challenges are properly brought under § 1983. Even so, as it relates to the claims now remaining in this case, Zellers has not established an entitlement to the relief he seeks. First of all, he has not shown that he is likely to suffer irreparable harm in the absence of the preliminary relief he seeks. His claims relate to conditions as they existed in June 2020, and his allegation that those conditions caused him to contract COVID-19 and become seriously ill. Neither his complaint nor his motion presents sufficient facts from which the court could conclude that his continued incarceration puts him at significant risk of contracting COVID-19 again. For example, he has

9

not offered evidence about what immunities he may now have as the result of either natural immunity or vaccinations, nor has he provided information about the likelihood of transmission based on vaccination rates generally at BKCC. He also does not present anything to the court (other than his conclusory statements that he is at-risk and would be safer at his mother's home) to indicate that the conditions at BKCC currently are the same as they were when he first contracted the disease, which was in the fairly early days of the spread of COVID-19. In short, he has failed to show—as he must—that he is likely to suffer harm that is "neither remote nor speculative, but actual and imminent" in the absence of an injunction. *Direx Israel, Ltd.*, 952 F.2d at 812.

Furthermore, the remedy of granting release to a state prisoner based on his conditions of confinement would be a great intrusion into the state correctional system, such that the balance of equities and public interest do not favor such relief in this case. Indeed, courts must be particularly cautious in granting any injunctive relief that interferes with prison officials' management of prisons. *See Owens v. FCI Beckley*, No. 5:12-3620, 2013 WL 623089, at *5 (S.D.W. Va. Jan. 31, 2013) ("[P]reliminary injunctive relief involving the management of prisons should be granted only under exceptional and compelling circumstances).

The court's reasoning in *Hallinan v. Scarantino*, 460 F. Supp. 3d 587 (E.D.N.C. 2020), is instructive. There, the court concluded that the medically vulnerable plaintiffs, who were federal prisoners, had sufficiently established a likelihood of irreparable harm based on rising COVID-19 rates at their facility. *Id.* at 608. Nonetheless, the court denied their motion for preliminary injunction seeking release from prison, transfer to a different facility where COVID-19 was not spreading as rapidly, or medical furlough, in part because the balance of the equities and the public interest did not weigh in favor of granting preliminary relief. *Id.* at 609–10. As the court explained, the relief sought "would undermine [the Bureau of Prisons'] systemic response to the

COVID-19 pandemic [and] inappropriately insert the judicial branch into policy decisions that have been assigned to expert prison administrators . . . ." *Id.* at 609. The same is true here. Moreover, "[i]t is well established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." *Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir. 1994).

As another court explained in denying plaintiff's preliminary injunction motion seeking release from immigration detention centers based on COVID-19 risks, federal courts have broad equitable remedial powers that may allow release as a remedy for unconstitutional conditions, but such powers have historically been exercised only "when constitutional violations are otherwise unable to be cured. *Toure*, 458 F. Supp. 3d at 402 (citing *Brown v. Plata*, 563 U.S. 493, 511 (2011)), *appeal dismissed,* No. 20-6695, 2020 WL 9596387 (4th Cir. Oct. 6, 2020). As in *Toure*, plaintiff here has "pled and argued that release is the only remedy that could cure the harm [he] complain[s] of, [but he] has not shown that to be the case." *Id.* at 402.

For all of these reasons, the court concludes that Zellers has failed to adequately show an entitlement to the relief he seeks, which is an order that he be permitted to reside at his mother's home. Thus, his motions for preliminary injunctive relief will be denied.

### III. OTHER MISCELLANEOUS MOTIONS

**A. Motions to Proceed *in forma pauperis***

Zellers has filed repeated motions to proceed *in forma pauperis*. (Dkt. Nos. 7, 11, 20). Those motions will be granted insofar as he will not be required to pay the full filing fee in this case. Instead, he will be permitted to proceed without a full prepayment of fees and a collection order allowing him to pay the filing fee in installments will be entered.

### B. Motions for Discovery

Zellers has filed a motion for discovery (Dkt. No. 59) and a separate motion titled as a "Motion to Court to Order Buckingham Correctional Center's Asst. Warden to Release the Requested Information for Pending Case with Court Deadline," which cites to Federal Rule of Civil Procedure 34 and requests information and documentation.[4] (Dkt. No. 67.)

No defendant has yet been served or entered an appearance in the case. Accordingly, these two motions, which seek discovery, are premature and will be denied without prejudice. Also, many of Zellers's discovery requests relate to attempts to identify the John Doe defendants (who will no longer be defendants in this particular case) or to obtain information related only to claims that the court is dismissing. Accordingly, they have little or no relevance to the claims being permitted to remain in the case.

### C. Motion for "Compensation for Damages"

Zellers's motion for "compensation for ongoing damages" (Dkt. No. 69) asks the court to order BKCC and its Warden, John Woodson, to produce much of the same information requested in his requests for discovery. It also asks that the court impose a fine of $1,000 per day, to be paid to Zellers, for each day that Woodson fails to comply after the court's order is entered. To the extent Zellers is seeking discovery sanctions in this motion, his requests are denied for the same reason that the court has denied discovery in the case—discovery is not yet permitted in a case where the defendant has not even been served or entered an appearance.

To the extent he is seeking compensation for any portion of the harm alleged in the complaint, any such determination of compensation (or any other element of damages) cannot be determined until—and unless—there is a finding of liability on the part of any defendant. This case is in its preliminary stages, and defendants have not yet even been served or appeared.

---

[4] This motion also requests that the court direct BKCC to provide him with a laptop computer and a flash drive to assist him with prosecuting this lawsuit. He offers no authority for this request, and it will be denied.

Thus, this motion, too, will be denied as premature.

### D. "Motion Requesting Delivery of Declaration to Witness"

Zellers's final pending motion is one he has titled as a motion requesting delivery of a declaration to a witness. (Dkt. No. 63.) In it, Zellers asks that the court provide to F. Carr, a former correctional officer at BKCC, a draft declaration he has drafted, which can be mailed to her "for her signature and additional information." (Dkt. No. 63 at 1.) It also requests that defendant Warden Woodson be directed to provide the Clerk with Carr's mailing address so that the declaration can be sent to her.

Again, this motion effectively seeks discovery and such requests are premature. Thus, this motion will be denied without prejudice.

### IV. CONCLUSION

An appropriate order will be entered setting forth the foregoing rulings.

Entered: November 5, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

13