UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES E. ZELLERS, SR.,  ) | |
|     Plaintiff,  ) | Civil Action No. 7:21-cv-393 |
| ) | |
| v.  ) | |
| ) | By: Elizabeth K. Dillon |
| RALPH S. NORTHAM, *et al.*,  ) | United States District Judge |
|     Defendants.  ) | |

**MEMORANDUM OPINION**

    Charles E. Zellers, Sr., an inmate in the custody of the Virginia Department of Corrections ("VDOC"), proceeding *pro se,* commenced this civil action under 42 U.S.C. § 1983. The court previously *sua sponte* dismissed some of Zellers's claims and some of the defendants, but it allowed the case to go forward as to certain claims and directed service on the remaining defendants. In two different motions to dismiss, defendants have sought the dismissal of all claims against them, and Zellers has filed a response. Those motions will be addressed in due course by a separate opinion.

    Also pending before the court are three additional motions, all filed by Zellers and all addressed herein. First, Zellers moves for the entry of default against all defendants, arguing that their response to his complaint was filed two days late. (Dkt. No. 80.) Second, Zellers has filed a motion requesting injunctive relief in the form of an order requiring VDOC to provide all inmates access to electronic legal research, via a wifi network, twenty-four hours a day, seven days a week. (Dkt. No. 85.) Third, Zellers has filed a motion for preliminary injunction supported by a declaration in which he argues that he needs to receive "proper treatment at the proper time" or he may never walk normally again. (Dkt. No. 87 at 3.) He is concerned that he might permanently lose the "normal use of his breathing and standing/walking." (*Id.*) He wants to be sent to the University of Virginia Hospital, for follow-up and testing on his "COVID-19 long-hauler[]" symptoms, and he wants to be treated by a physician who specializes in the

treatment and testing of post-COVID-19 symptoms. (Zellers Decl. at 5, ECF No. 87-1.) He also wants physical therapy services. (*Id.* at 6.) His proposed injunction order also includes a lot of language not relevant to him specifically, but more generally directed toward conditions or services at Buckingham Correctional Center ("BCC"), where he is housed, or within VDOC more broadly.[1] The court ordered defendants to respond to the motion for entry of default and the first motion for preliminary injunction, which they have done. Zellers filed a reply (Dkt. No. 93), which the court also has considered.

All three motions are ripe for disposition, and, for the reasons discussed herein, the court will deny all of them.

I. OVERVIEW OF PLAINTIFF'S CLAIMS

In its prior memorandum opinion, the court explained what claims would remain in the case:

> [T]he court will allow in this case Zellers's claims that . . . defendants Northam, Clarke, and John A. Woodson failed to adequately protect him from contracting COVID-19. This includes the allegations set forth in Claims 1, 15, 25, 26, 27, and 28, which allege unsanitary conditions, failures to conduct contact tracing or to provide personal protective equipment, a general failure to protect him from COVID-19, and a failure to adequately and reasonably reduce prison population to prevent the spread of COVID-19. The court also will include Claims 3 through 6 as against Northam, Clarke, Warden Woodson, and Correctional Officer L. Woodson. These claims focus on Zellers's inability to receive prompt medical attention once he began experiencing medical symptoms of COVID-19. For example, he alleges that, although he complained of medical symptoms, he was unable to quickly report them to staff because there was no one available to whom to report them. He also did not receive immediate medical attention for those symptoms, which he attributes to chronic understaffing at [BCC]. He also alleges that defendants failed "to

---

[1] For example, he includes language requiring VDOC to reduce BCC's population to one-man cells, to implement certain COVID-19 procedures, to send all offenders who contracted COVID-19 for lab work, and to release or grant parole to those who meet certain criteria. (*See generally* Proposed Order, Dkt. No. 87-2.) He also includes language requiring security rounds in the SHU at specific intervals and ordering VDOC to install an "intranet system and provide each offender with Chromebook, laptop, tablet computer, so offenders will have 24-7 Wi-Fi or internet access" to various materials. (*Id.* at 2–3.) And he wants the court to order VDOC to close dilapidated prisons that are understaffed or built on landfills. (*Id.* at 3.) These are only some of his requests.

>    create and implement a policy" requiring that suspected or
>    confirmed COVID-19 patients be transported by wheelchair or
>    stretcher to medical; consequently, he was forced to walk to
>    medical despite having difficulty breathing.

(Mem Op. 4–5, Dkt. No. 70.)

## II.  MOTION FOR ENTRY OF DEFAULT

Zellers's first motion seeks the entry of default against all defendants, and he correctly notes that defendants did not file a timely response to the complaint. (Dkt. No. 80.) Based on the date the waivers of service were sent to defendants, which they returned, their response to the complaint was due on January 4, 2022. They did not file an answer but instead filed motions to dismiss two days late, on January 6, 2022. Although they were technically in default, then, they had filed their responses on the same day Zellers signed his request for entry of default (*see* Dkt. No. 80 at 1) and before his motion was even received by the Clerk. In their response to the motion to default, moreover, defendants explain that counsel had inadvertently calculated the due date for responsive pleadings as being January 6, 2022, which is the reason for the two-day delay.

Defendants also request an additional two days in which to file their initial responsive pleadings. (Dkt. No. 84 at 5.) The court will grant that motion and deem their motions to dismiss timely filed. Accordingly, both the entry of default and the entry of default judgment would be improper.

Even if the court had declined to grant an extension, such that defendants technically were in default, Federal Rule of Civil Procedure 55(c) allows a court to "set aside an entry of default for good cause" shown. And in determining whether default should be set aside (or a default judgment should be entered), courts generally consider: (1) whether the defaulting party "has a meritorious defense" to a claim against it; (2) whether the party was personally responsible for his default; (3) whether the party "act[ed] with reasonable promptness" in moving to set aside default, or has "a history of dilatory action"; and (4) whether setting aside default would prejudice

3

the plaintiff. *Payne v. Brake*, 439 F.3d 198, 104–05 (4th Cir. 2006).

In this case, these factors fully support setting aside any default. Although the court is not ruling on the motions to dismiss at this time, defendants have at least set forth in those motions what they deem to be a "meritorious defense." Second, it was counsel's inadvertent error, and not the defendants themselves, that caused the late filing. Third, defendants responded to the complaint only two days late, and, had defendants moved for leave to file out of time then, the court would have granted the motion. There also is no history of any "dilatory" action by defendants or their counsel in this case. *See id.* at 204. Fourth, given the promptness with which defendants acted, the court finds no prejudice to Zellers by setting aside any default.

The court also notes the "strong preference . . . that claims and defenses be disposed of on their merits." *Colleton Prep. Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also id.* ("Rule 55(c) motions must be liberally construed [to avoid the potentially] onerous consequences of defaults."). Indeed, "the extreme sanction of judgment by default is reserved [only] for cases . . . where the party's noncompliance represents bad faith or a complete disregard for the mandates of procedure and the authority of the trial court." *Parks v. Discount Box & Pallet, Inc.*, No. 5:12cv081, 2013 WL 662951, at *4 (W.D. Va. Feb. 22, 2013) (citation omitted). This is not that type of case.

For all of these reasons, Zellers's motion for entry of default (Dkt. No. 80) will be denied.

### III. MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF

The court previously denied a number of motions for preliminary injunction filed by Zellers. (*See* Mem. Op. 7–11, Dkt. No. 70.) Zellers has now filed two additional motions requesting injunctive relief. In the first, he asks the court to order VDOC to provide legal research materials via an intranet/wifi system for all Virginia inmates.[2] (Dkt. No. 85.) In the

---

[2] In a January 21, 2022 order, the assigned United States Magistrate Judge noted that Zellers had suggested VDOC should update its electronic research capabilities but that he had "not asked for relief related to" that suggestion. (Order 1 n.1, Dkt. No. 83.) Zellers's motion requesting a court order requiring VDOC to provide unlimited legal research materials was filed shortly thereafter.

4

second, he requests a court order directing that he receive adequate medical care, including care by outside medical providers. (Dkt. No. 87.) As explained *supra* at note 1, his proposed injunction also contains a whole range of other directives aimed at VDOC more generally. (*Id.*) Both of these motions will be denied.

### A. Request for Unlimited Access to Electronic Legal Research

As to the first request, a preliminary injunction is not appropriate when it seeks to avert a harm that does not arise from the harm alleged in the complaint. *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997). The movant thus must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Id.*; *see In re Microsoft Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel*, 111 F.3d at 16; *see Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). Zellers's complaint does not contain a claim that he was denied access to the courts. In that sense, the relief he requests is to prevent a harm which was not "caused by the wrong claimed in the underlying action." *Omega World Travel*, 111 F.3d at 16.

Regardless, and contrary to Zellers's apparent belief, inmates are not entitled to unlimited access to legal materials. The Supreme Court has held that a right of access to the courts requires the provision of adequate law libraries or legal assistance to prisoners. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). An inadequate law library that actually hampers a prisoner's ability to file or prosecute a habeas action, in particular, could give rise to a constitutional injury. *Lewis v. Casey*, 518 U.S. 343, 354–55 (1996). But as the Supreme Court explained in *Lewis*, the duty of prison officials is to ensure that inmates "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions," and "it is that capability, rather than the

5

capability of turning pages in a law library," that the constitution requires. *Id.* at 356–57. Put differently, "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Id.* at 351. Instead, the right vindicated by *Bounds* is "meaningful access to the courts." *Id.* (citation omitted). And that right is infringed only where the inadequacies of a law library actually hinder an inmate's efforts to pursue a legal claim. *Id.*; *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002) (noting that to succeed on a claim that he has been denied access to the courts, a plaintiff must show that he had a "nonfrivolous" legal claim that has been lost). Zellers has not pointed to any claim—nonfrivolous or otherwise—that he has lost as a result of there not being better legal research facilities at BCC. Thus, he has not alleged or shown any constitutional injury as a result of the lack of constant access to computerized legal research. Nor has he shown that he is likely to lose his ability to pursue a non-frivolous legal claim as a result of his limited access to legal research, as required by *Lewis*. *See Christopher*, 536 U.S. at 415.

The court also finds it significant that Zellers's allegations do not show that he is being denied all access to the law library or to legal materials. To the contrary, he admits that before COVID-19-related lockdowns, he was able to access the law library for one hour per day on weekdays, that he has been able to meet with an institutional attorney, and that he has been able to request and receive legal materials from the law library, but that the process for doing so is "time-consuming," "costly," and "bad for the environment" because of the "waste of paper." (Mot. 4, Dkt. No. 85.) And while the library does not have "case citation books," Zellers admits that the library provides access to a computer and Lexis for computerized research. (*Id.* at 3, 5.) He simply wants that access all the time. (*Id.* at 5.)

The fact that the access Zellers has to legal materials is not as easy or as unlimited as he desires, without more, does not entitle him to the court order he seeks. This is particularly true

6

given the deference that the court must accord prison officials as to how to securely operate their facilities. *See Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980) (noting the "wide-ranging deference" courts accord decisions of prison administrators made in their informed discretion and emphasizing that deference by federal courts is especially important "where a state penal institution is involved"). The specifics of what type of legal research tools to provide and in what format is a matter of prison administration with which federal courts generally should not interfere. *Cf. Owens v. FCI Beckley*, No. 5:12-3620, 2013 WL 623089, at *5 (S.D.W. Va. Jan. 31, 2013) ("[P]reliminary injunctive relief involving the management of prisons should be granted only under exceptional and compelling circumstances.").

Moreover, the court can grant Zellers reasonable extensions of time to file documents if he needs additional time to conduct legal research. This lessens any prejudice or harm to him from his more limited access to legal materials. Because he has not shown an entitlement to the relief he seeks, Zellers's first motion for injunctive relief (Dkt. No. 85) must be denied.

**B. Motion for Preliminary Injunction**

Zellers's second motion for preliminary injunction fares no better. In it, he contends that he is not receiving adequate medical treatment, and he requests that the court direct him to be treated by a specific outside medical provider. (Dkt. No. 87.) As noted *supra* at note 1, he also requests a broad and sweeping injunction as to various aspects of prison administration, which defendants do not address in their response. His broader requests can be grouped into three general categories, and most of them appear to be brought on behalf of other inmates, as well as possibly for Zellers's benefit: (1) injunctive relief concerning policies and practices aimed to prevent the spread of COVID-19; (2) injunctive relief concerning the provision of medical care, dental care, and health services generally; and (3) injunctive relief in the form of requests for early release. The court addresses first his request for specific medical care for himself, and then

7

addresses all three categories of broader injunctive relief.

### 1. "Proper" Medical Treatment and Referral to Specific Outside Provider

As to Zellers's request for an order requiring medical care, defendants have provided an affidavit from Nurse Starkey at Zellers's current facility, BCC, which also includes hundreds of pages of Zellers's medical records. As detailed in the April 8, 2022 affidavit, Zellers has been seen on 35 separate occasions by medical personnel at BCC since he returned from the hospital in November 2020, after being treated for COVID-19. His most recent visit was on March 29, 2022. (Starkey Aff. ¶ 6 & Encl. A, Dkt. No. 92-1.) In the same period, he has been seen at least 15 times by outside medical providers, most recently on March 23, 2022. (*Id.* ¶ 7 & Encl. A.) The outside specialists he has seen practice in the areas of pulmonology, cardiology, radiology, neurology, and neurophysiology. (*Id.*) Nurse Starkey also avers that Zellers has a medical problem or concern, he may seek appropriate medical attention and care from BCC staff and that if he has a medical issue or emergency that requires him to be transported out of the facility, "arrangements would be made as they have been in the past." (*Id.* ¶ 8.)

In his reply, Zellers appears to acknowledge that he has been sent out for multiple outside specialist appointments, but he argues that this is not a "defense" because VDOC is obligated to send him for such appointments. (Reply 4–5, Dkt. No. 93.) He also requests that he be treated at a specific facility or by a physician with particular expertise in COVID-19 long-hauler symptoms. But a prisoner is not entitled to his choice of provider or even his choice of treatment; the Constitution requires only that he receive adequate medical care. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988); *see also Bridges v. Keller*, 519 F. App'x 786, 787 (4th Cir. 2013) ("Disagreement regarding the proper course of treatment provides no basis for relief."). As the Supreme Court has explained, "society does not expect that prisoners will have unqualified access to health care . . . ." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

8

Zellers also disputes the accuracy of the "35" number for the number of times he has been seen by medical staff at BCC. He claims that each time he has been seen he had to submit a sick call request, be seen by a sick call nurse, and then the nurse put him on a list to see a nurse practitioner and, "rarely," a doctor. Based on this, he claims that the number of visits should be cut in half. (*Id.* at 4.) Even so, he has thus been seen by a medical provider other than the sick call nurse approximately 17 times from November 2020 through March 2022, in addition to his outside appointments. Those numbers flatly refute his assertion that he has been unable to obtain medical care at BCC. Further, the fact that a nurse practitioner has seen him, rather than a physician, does not reflect inadequate treatment. Nurse practitioners are trained medical professionals who possess an advanced degree and professional licensure. In Virginia, they also have the authority to prescribe Schedule II through Schedule VI controlled substances and devices. Va. Code § 54.1-2957.01. At bottom, it is clear that he has been seen many times for medical care and that his medical requests are not being ignored.

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. *Winter*, 555 U.S. at 22. Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

Applying these standards to the record before it, the court easily concludes that Zellers is

9

not entitled to the injunction he seeks. In particular, he has failed to show—as he must—that he is likely to suffer harm that is "neither remote nor speculative, but actual and imminent" in the absence of an injunction. *Direx Israel, Ltd.*, 952 F.2d at 812. He admits as much in his reply, when he suggests that Nurse Starkey's affidavit cannot be believed because she cannot predict the future, so she cannot know that he will not suffer any harm. (Reply 8.) While it is true that she cannot predict the future, the burden is on *Zellers* to show that it is reasonably likely, and not just a speculative possibility, that harm will result absent an injunction. Rather than satisfying this burden, Zellers simply argues that "[a]nything can occur in a dangerous prison environment." (*Id.*) This does not meet his burden. In short, the record reflects that he is receiving medical care, including outside medical care. He thus cannot show that he is likely to suffer actual and imminent harm without an injunction. This portion of his request for injunctive relief must be denied.

The court turns next to his three broader categories of requests for injunctive relief.

### 2. Requests for Release from Incarceration

As the court already has advised, release from incarceration, or release to home confinement is not appropriate relief in this case. (*See* Mem. Op. at 7–11, Dkt. No. 70.) In response, Zellers claims that he is not seeking "release" but an "enlargement" of custody to a community correctional center or to confinement at his mother's home.

That is a matter of semantics. Zellers is asking for a reduction of his time in custody or an alteration of his sentence so that a portion is served on home confinement. That is not relief the court can grant in this case, for all the reasons the court previously advised. (*See id.*) Nothing in Zellers's more recent submissions convinces the court otherwise.

### 3. Requests for Policies Aimed At Preventing the Spread of COVID-19

The injunction proposed by Zellers also includes a number of provisions that would

require VDOC to take certain steps to curb the spread of COVID-19, including increasing staffing and decreasing the prison population. Although this relief relates to claims in complaint, he cannot satisfy at least one of the *Winter* factors as to these requests. In particular, the court concludes that he is not likely to succeed on the merits of his claims that defendants were deliberately indifferent to the risk of COVID-19 spreading in violation of his Eighth Amendment rights.

In addition to other grounds on which defendants seek dismissal, they also argue that Governor Northam is entitled to Eleventh Amendment immunity for official-capacity claims and that Zellers has not adequately alleged the Governor's personal involvement or any facts to find that he was deliberately indifferent toward Zellers. (*See* Mem. Support Mot. to Dismiss 5, 7–9, Dkt. No. 76.) They also argue that the history of VDOC's COVID-19 response measures, and even some of Zellers's own allegations, show that they did not exhibit deliberate indifference to the potential spread of COVID-19 within VDOC generally, or within BCC specifically. Instead, they took various precautionary measures in response to the pandemic. (*Id.* at 9–15.) Thus, they assert that Zellers has failed to state an Eighth Amendment claim against them. They also contend that they are entitled to qualified immunity, (*id.* at 15–18), and this court has found similar defendants named in similar claims were entitled to qualified immunity. *See Ross v. Russell*, No. 7:20-cv-774, 2022 WL 767093, at *14 (W.D. Va. Mar. 14, 2022).

While the court is not issuing a ruling on the motions to dismiss at this time, many of defendants' arguments against liability are persuasive. Thus, the court concludes that, as to the conditions of confinement claims related to the spread of COVID-19, Zellers has not shown that he is likely to succeed on the merits of his claims. Thus, he is not entitled to any injunctive relief related to those claims.

Additionally, Zellers has not pointed to sufficient evidence that the conditions at BCC

currently are the same (or similar) to those conditions at the time of the events alleged in the complaint. Zellers alleges that he contracted COVID-19 in June 2020, and it appears that he left the hospital for the final time in November 2020. Currently, vaccines that are very effective at preventing serious disease are widely available in the United States. Ctrs. for Disease Control, *COVID-19 mRNA vaccines are highly effective in preventing the most severe forms of COVID-19* (March 25, 2022), https://www.cdc.gov/mmwr/volumes/71/wr/mm7112e1.htm. In November 2020 and before, however, VDOC had not begun vaccinating inmates. Va. Dep't of Corr., *Virginia Department of Corrections Encourages Inmates to Take the COVID-19 Vaccine*, (Jan. 21, 2021), https://vadoc.virginia.gov/news-press-releases/2021/virginia-department-of-corrections-encourages-inmates-to-take-the-covid-19-vaccine/#:~:text=VADOC%20medical%20staff%20are%20administering,648%20inmates%20had%20received%20vaccinations (reporting that VDOC facilities began vaccinations of inmates in mid-January 2021). So, Zellers cannot show that, without an injunction, the current conditions at BCC are such that he is likely to suffer actual and imminent harm without an injunction.

For all of these reasons, this relief will be denied.

**4. Requests for More Robust Medical Care, Including Mental Health Care**

Zellers devotes much of his reply to discussing the general lack of medical staff and medical care at BCC. He references dental care, eye care, and mental health care, among other types of medical treatment, all of which he contends are difficult to obtain and often subject to delays. Many of his requests are simply requests for general relief, but he has not alleged or shown that they relate to him at all, let alone that they are related to his claims in this case. Critically, however, Zellers may not seek relief on behalf of other prisoners because a *pro se* plaintiff may not represent the interests of other prisoners. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit this imprisoned litigant who is

12

unassisted by counsel to represent his fellow inmates in a class action.").

Furthermore, for the reasons discussed above in Section III-B-1, *supra*, Zellers has not shown that he is likely to suffer imminent harm in the absence of an injunction requiring more or different medical care. As noted, he has been receiving treatment and continues to receive treatment, including care by specialists outside of BCC. This request, too, must be denied.

## IV.  CONCLUSION

For the foregoing reasons, the court will deny the three pending motions filed by Zellers. An appropriate order will be entered.

Entered: May 5, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge